[Cite as *Estate of Mennett v. Stauffer Site Servs., L.L.C.*, 2020-Ohio-4355.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| ESTATE OF MARCUS A. MENNETT, | : | |
| Appellant, | : | CASE NOS. CA2019-09-096 |
| | | CA2019-10-110 |
| | : | |
| - vs - | : | O P I N I O N |
| | : | 9/8/2020 |
| STAUFFER SITE SERVICES, LLC, et al., | : | |
| Appellees. | : | |


CIVIL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 17CV090292


Plevin & Gallucci Co., L.P.A., David R. Grant, Frank L. Gallucci, III, 55 Public Square, Suite 2222, Cleveland, Ohio 44113 and Paul W. Flowers Co., L.P.A., Paul W. Flowers, Louis E. Grube, 50 Public Square, Suite 1910, Cleveland, Ohio 44113 for appellant

Minnillo & Jenkins Co., LPA, James D. Ludwig, Christian A. Jenkins, Robb S. Stokar, 2712 Observatory Avenue, Cincinnati, Ohio 45208 for appellees


**PIPER, J.**

{¶1}  Appellant, the Estate of Marcus A. Mennett, appeals the grant of summary judgment by the Warren County Court of Common Pleas in favor of appellees, Stauffer Site Services, LLC, ("Stauffer") Jack Stauffer, and John Stauffer.

{¶2}  Stauffer provided excavating and installation services for the Hillsboro North

East Street Reconstruction Phase I Project ("the project"). During the project, both Jack and John were at the job site to work and supervise Stauffer employees. Mennett, a Stauffer employee, was involved in the project specific to spreading gravel at the bottom of an excavated trench and setting storm sewer pipes.

{¶3} At one point in the project, Stauffer dug a trench that was approximately nine and one-half feet deep. That day, Jack arrived on the scene along with Shawn Adkins, the Public Works Superintendent with the city of Hillsboro. Together, Jack and Adkins assessed the trench and noticed that water had begun to seep into the trench and a side of the trench seemed unstable. After discussions between Jack and Adkins, Jack ordered that work stop because the trench was unsafe.

{¶4} Jack and Adkins left the jobsite to locate trench boxes from the city to help secure the sides of the trench. As Jack and Adkins returned to the jobsite approximately 20-30 minutes later, the trench collapsed and buried Mennett, who had returned to the bottom of the trench at some point after the work-stop order was issued. Mennett was dug out of the trench alive but passed away two days later from his injuries.

{¶5} After an investigation, OSHA issued a citation and notification of penalty to Stauffer, including multiple violations of safety regulations and willful violation of the requirement for trench protection systems. Mennett's estate filed a wrongful death/survivorship action and discovery ensued. Stauffer, Jack, and John later filed a motion for summary judgment, which was granted by the trial court. Mennett's estate now appeals the trial court's grant of summary judgment, raising the following assignment of error:

{¶6} THE TRIAL COURT ERRED, AS A MATTER OF LAW, BY GRANTING SUMMARY JUDGMENT UPON THE STATUTORY AND COMMON LAW WORKPLACE

INTENTIONAL TORT CLAIMS THAT HAD BEEN ESTABLISHED IN THE EVIDENTIARY RECORD.

{¶7} Mennett's estate argues that the trial court erred in granting summary judgment in favor of Stauffer, Jack, and John.

{¶8} We review a trial court's decision granting summary judgment de novo. *Moody v. Pilot Travel Ctrs., LLC*, 12th Dist. Butler No. CA2011-07-141, 2012-Ohio-1478, ¶ 7. "De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial." *Morris v. Dobbins Nursing Home*, 12th Dist. Clermont No. CA2010-12-102, 2011-Ohio-3014, ¶ 14.

{¶9} Summary judgment is proper "if there are no genuine issues of material fact to be litigated, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party." *Drew v. Weather Stop Roofing Co., LLC*, 12th Dist. Clermont No. CA2019-10-082, 2020-Ohio-2771, ¶ 10.

{¶10} Generally, actions for injuries sustained in the course of employment must be addressed within the framework of Ohio's workers' compensation statutes. However, in limited circumstances, an employee may institute an intentional tort claim against his or her employer pursuant to Ohio's Employer Intentional Tort statute as codified in R.C. 2745.01.

{¶11} According to R.C. 2745.01,

(A) In an action brought against an employer by an employee, or by the dependent survivors of a deceased employee, for damages resulting from an intentional tort committed by the employer during the course of employment, the employer shall not be liable unless the plaintiff proves that the employer committed the tortious act with the intent to injure another or with the belief that the injury was substantially certain to occur.

(B) As used in this section, "substantially certain" means that an employer acts with deliberate intent to cause an employee to suffer an injury, a disease, a condition, or death.

{¶12} "R.C. 2745.01 embodies the General Assembly's intent to significantly curtail an employee's access to common-law damages for [ ] a 'substantially certain' employer intentional tort." *Pastroumas v. UCL, Inc.*, 1st Dist. Hamilton No. C-150352, 2016-Ohio-4674.

{¶13} Acting with the belief that an injury is "substantially certain" to occur is not analogous to wanton misconduct, nor is it "enough to show that the employer was merely negligent, or even reckless." *Talik v. Fed. Marine Terminals, Inc.*, 117 Ohio St.3d 496, 2008-Ohio-937, ¶ 17. Rather, as noted by the Ohio Supreme Court, one may recover "for employer intentional torts only when an employer acts with specific intent to cause an injury." *Kaminski v. Metal Wire Prods. Co.*, 125 Ohio St.3d 250, 2010-Ohio-1027, ¶ 56. "Absent a deliberate intent to injure another, an employer is not liable for a claim alleging an employer intentional tort, and the injured employee's exclusive remedy is within the workers' compensation system." *Houdek v. ThyssenKrupp Materials N.A., Inc.*, 134 Ohio St.3d 491, 2012-Ohio-5685, ¶ 25.

{¶14} The *Houdek* court even cited with approval 6 *Larson's Workers' Compensation Law*, Section 103.03, 103-7 to 103-8 (2001), which explained "that an employer's 'knowingly permitting a hazardous work condition to exist [and] knowingly ordering employees to perform an extremely dangerous job * * * falls short of the kind of actual intention to injure that robs the injury of accidental character.'" *Id.* at ¶ 24.

{¶15} A failure to provide safety protection or to adhere to OSHA regulations does not create a genuine issue of fact as to whether the employer committed an intentional tort absent proof of a deliberate, conscious attempt to injure. *Pastroumas.* Nor do deficiencies

in training, safety procedures, safety equipment, instructions, or warnings. *Williams v. Alpla, Inc.*, 3d. Dist. Allen No. 1-16-53, 2017-Ohio-4217, ¶ 10.

{¶16} It is undisputed from the record that the project was lacking safety measures in the form of trench boxes. The record also shows that Mennett lacked experience in the excavation business and that there were multiple OSHA violations cited and penalties associated with the project following Mennett's tragic death. However, and as noted above, the lack of safety measures and training, or even citations and violations, do not raise genuine issues of material facts absent *proof* of deliberate and conscious attempt to injure. According to the record, no such proof exists.

{¶17} Adkins testified at his deposition that Mennett was not in the trench at the time he and Jack determined the trench was unsafe and stopped work. According to uncontroverted deposition testimony, all workers took a break from work on the trench once Jack issued the stop-work order. One worker went to a nearby fire station to fill his water bottle, one worker went to use the restroom, and another worker made a phone call. No work was being performed on the trench once Jack and Adkins left to procure trench boxes.

{¶18} Mennett's estate suggests that there is a genuine issue of material fact as to whether a stop-work order was ever issued. However, it does not offer any proof that the order was not given and instead only questions the credibility of the multiple witness statements that a stop-work order was issued. The estate's argument asks this court to presume that the witnesses lacked credibility, and even suggests a conspiracy among the witnesses to create testimony of a stop-work order. However, there are no facts in evidence, nor testimony, to contradict the actual testimony given or to raise a *genuine* issue of fact as to the stop-work order.

{¶19} Even the estate's own experts testified that at the time of the collapse, Stauffer

had begun to take action to remedy safety concerns, including stopping work in the trench. One expert testified in his deposition that by the time the work-stoppage order was issued, and Jack and Adkins left to secure trench boxes, Stauffer "obviously started exhibiting concern for their employees." Another of the estate's experts testified in his deposition that he "was not aware of any other - - there's no evidence that indicates that there was other work going on after" Jack issued the stop-work order.

{¶20} There is no explanation of record to show why Mennett made the choice to reenter the trench. More importantly, there is no evidence in the record that Mennett's reentering the trench was at Stauffer's behest. Nor is there any evidence that Stauffer ever directed Mennett to reenter the trench or continue his work once the dangerous conditions were noted and Jack ordered that work be stopped. As noted earlier, Mennett's job specifically entailed spreading gravel in the trench and setting pipe. However, there was no gravel in the trench at the time of the collapse, nor pipe, and thus Mennett had no work to perform in the trench when it collapsed.

{¶21} Moreover, at the time of the collapse, Jack and Adkins had left the jobsite to procure trench boxes after specifically deeming the trench unsafe. Thus, Stauffer had recognized and publicized the unsafe conditions, and workers had abandoned work on the trench once the determination was made that it was unsafe. Thus, there is no indication that Stauffer had a deliberate intent to injure as is required by the statute.

{¶22} Mennett's death, while unquestionably tragic, was not caused by any specific intent to cause injury by Stauffer. Instead, once Jack issued the work-stoppage order and sought safety measures, the evidence shows that Stauffer demonstrated a conscious regard for employee safety. Rather than direct Mennett to continue his work in the trench, Mennett had exited the trench and no order was issued to return to work.

{¶23} Mennett's estate also argues that the trial court did not rule on its claim for co-employee common law intentional tort. While the trial court did not expressly list or analyze the co-employee intentional tort elements, the trial court did address the lack of genuine issues of fact as such related to the relevant standard. After our de novo review of the issue, we find that summary judgment is proper on the common law claim as well.

{¶24} R.C. 2745.01 does not eliminate the common-law cause of action for an employer intentional tort. *Stetter v. R.J. Corman Derailment Servs., L.L.C.*, 125 Ohio St.3d 280, 2010-Ohio-1029, paragraph 3 of the syllabus. A plaintiff seeking to prevail on a claim of co-employee intentional tort must show,

> knowledge by the co-employee of the existence of a dangerous process, procedure, instrumentality, or condition within its business operation; (2) knowledge by the co-employee that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality, or condition, then harm to the employee will be a substantial certainty; and (3) that the co-employee, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task.

*Head v. Reilly Painting & Contracting, Inc.*, 8th Dist. Cuyahoga No. 101718, 2015-Ohio-688, ¶ 16. This test is conjunctive so that the failure to establish any one of the elements is grounds for summary judgment. *Id.*

{¶25} The record contains no evidence that Mennett's coworkers acted to force him to continue to work in the trench once Jack and Adkins determined that water in the trench had made the conditions unsafe. Instead, the undisputed facts of record indicate that Jack ordered that work stop on the trench and that he and Adkins left to retrieve a trench box to make the conditions safer. During that time, all workers abandoned work on the trench, with workers doing different things during the break. For an unknown reason, Mennett reentered the trench before the accident occurred, but there is no evidence that Mennett's

actions were based upon any act from his coworkers that required him to reenter and work in the trench.

{¶26} The speculation raised within the estate's brief that Mennett *must have* reentered the trench if "he expected to retain his employment with the company" is wholly unsupported by evidence and there is no proof from either party that establishes why Mennett was in the trench at the time of the collapse. Mennett's main job was to spread gravel and lay pipe. However, as noted above, there was neither gravel nor pipe in the trench at the time of its collapse. Thus, it is unreasonable to infer that Mennett felt compelled to reenter the trench and wait in an area he had been told was unsafe until others began their work again. Mennett's estate has failed to offer any evidence, other than mere speculation, to raise a genuine issue of material fact that the reason Mennett was in the trench was due to his coworkers' requirement that he continue to work in the dangerous trench.

{¶27} After a full review of the record, we find that the trial court properly granted summary judgment on all claims in favor of Stauffer, John, and Jack. As such, the assignment of error raised by Mennett's estate is overruled.

{¶28} Judgment affirmed.

HENDRICKSON, P.J., and M. POWELL, J., concur.