[Cite as *Berkheimer v. REKM, L.L.C.*, 2023-Ohio-116.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| MICHAEL BERKHEIMER, | : | |
| Appellant, | : | CASE NO. CA2022-03-026 |
| | : | O P I N I O N |
| - vs - | | 1/17/2023 |
| | : | |
| REKM, LLC DBA WINGS ON BROOKWOOD, et al., | : | |
| | : | |
| Appellees. | : | |

CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV-2006-11-7585

Goldenberg Schneider, LPA, and Todd B. Naylor; Minnillo Law Group Co., LPA, and Robb S. Stokar, for appellant.

Markesbery & Richardson Co., L.P.A., and Samuel A. Gradwohl, for appellee, REKM, Inc.

Locke Lord, LLP, and T. Patrick Byrnes and Matthew J. Kalas; Green & Green, and Jared A. Wagner, for appellees, Wayne Farms, LLC and Gordon Food Service, Inc.

**HENDRICKSON, J.**

{¶ 1} Appellant, Michael Berkheimer, appeals from an order granting summary judgment in favor of appellees, REKM, L.L.C. d/b/a Wings on Brookwood, Gordon Food Service ("GFS"), and Wayne Farms, L.L.C. For the reasons detailed below, we affirm the decision of the trial court.

{¶ 2}   This case arises from injuries Berkheimer sustained while dining at Wings on Brookwood, a Butler County restaurant owned and operated by REKM.   Specifically, Berkheimer alleged that on April 1, 2016, he sustained injury after ingesting a bone while consuming a "boneless" chicken wing at the restaurant.   As a result, Berkheimer filed a complaint alleging negligence and other claims against REKM, its food supplier GFS, and Wayne Farms, the manufacturer of the chicken product.

{¶ 3}   In 2017, defendants REKM, GFS, and Wayne Farms moved the trial court for judgment on the pleadings.  The trial court granted the defendants' motions and entered judgment in their favor.   Berkheimer appealed the trial court's decision and this court reversed the court's judgment in *Berkheimer v. REKM, L.L.C.*, 12th Dist. Butler No. CA2017-12-165, 2018-Ohio-2668 (*Berkheimer I*).  In our decision, we noted that whether a consumer can reasonably anticipate and guard against eating an injurious object in a meat dish is not an issue that is typically appropriate for judgment on the pleadings.  *Berkheimer I* at ¶ 21. Based upon the state of the record at the pleading stage, material facts of the case remained undetermined, including details relating to the production or processing of the chicken product Berkheimer consumed, and the size of the bone at issue.  *Id.* at ¶ 17-20. As a result, this court concluded the trial court lacked the facts necessary to determine beyond a doubt that Berkheimer could prove no set of facts that may entitle him to relief, and therefore, the trial court erred in granting judgment on the pleadings to the defendants. *Id.*

{¶ 4}   On remand, the parties engaged in discovery, including deposing Berkheimer and corporate representatives from REKM, Wayne Farms, and GFS.   The deposition testimony and accompanying exhibits revealed that on Friday April 1, 2016, Berkheimer and six others, including his wife, dined at Wings on Brookwood.   Berkheimer was considered a regular of the establishment, as he dined there approximately once a week.

The day of the incident, Berkheimer ordered his "usual order," boneless chicken wings (also referred to as "boneless wings") with parmesan garlic sauce.  Upon receiving his order, Berkheimer noticed the boneless wings were larger than normal.  Berkheimer proceeded to cut his first boneless wing into thirds with a fork and knife.  Although the boneless wings were larger than normal, Berkheimer clarified he always cut his boneless wings into halves or thirds because "[he's] not going to eat them with his finger," or "put the whole damn thing in [his] mouth."

{¶ 5}   Berkheimer began eating the second wing in the same manner as the first, i.e., by cutting the wing into thirds with a fork and knife.  After chewing and swallowing the third and final piece of the second boneless wing, Berkheimer felt like "something went down, a piece of meat went down the wrong wind pipe (sic)."  At that point, Berkheimer went to the restroom and unsuccessfully attempted to clear his throat.  Berkheimer returned to the table for approximately 20 minutes before he and his wife left the restaurant.  At the time of the incident, Berkheimer believed he had just "choked on a piece of food."

{¶ 6}   Over the following three days, Berkheimer's condition worsened.  On Monday, April 4, 2016, Berkheimer went to the emergency room due to a high fever.  Upon Berkheimer's arrival, an emergency room employee conducted an x-ray of his throat and chest and noticed his throat was swollen.  After his wife expressed concern that something was lodged in Berkheimer's throat, a doctor surgically examined Berkheimer's throat. The doctor reported that he discovered a "thin chicken bone" lodged in Berkheimer's esophagus, which was successfully dislodged and removed with forceps.  The official diagnosis of the doctor indicated, in relevant part, that "[a] 5cm-long chicken bone wedged in [the] upper esophagus was removed endoscopically."  According to Berkheimer, he estimated the chicken bone was between one and one-half inches and two inches, but he had no reason to dispute the doctor's note describing the chicken bone as five centimeters long.

Photographs of the chicken bone submitted by Berkheimer indicate the chicken bone was approximately one and three-eighths inches long. It is undisputed that Berkheimer suffered serious and permanent injuries as a result of the incident.[1]

{¶ 7} The boneless wings consumed by Berkheimer the day of the incident were described on Wings on Brookwood's menu as "boneless" chicken. The menu did not include any warning that chicken products may contain bones. Berkheimer acknowledged during his deposition that he was unsure how the boneless wings were typically prepared by Wings on Brookwood or what type of packaging the restaurant received the chicken product in.

{¶ 8} Sam Platt testified that he prepared Berkheimer's boneless wings on the day in question and described his typical preparation and serving of the boneless wings. Platt explained that the boneless wings are made from pre-butterflied, boneless skinless chicken breasts supplied to REKM by GFS. He began preparing the boneless wings by cutting the boneless, skinless chicken breast in half and trimming the halves into rectangles. The halves were then cubed into approximately one-inch chunks, tossed in flour, placed in the fryer, and tossed in the customer's preferred sauce. Although Platt estimated he physically touched 90 percent of the boneless wings before they were served to the customer, he indicated he would not necessarily discover a small sized bone inside the chicken breast.

{¶ 9} Based on the above, REKM moved the trial court for summary judgment on each of Berkheimer's claims. A few months later, Wayne Farms and GFS jointly moved the trial court for summary judgment on all claims. Berkheimer opposed both motions and the

---

1. During his deposition, Berkheimer testified the chicken bone perforated his throat, resulting in an infection and significant bacteria in his chest cavity. Surgery was required to remove the bacteria, during which medical personnel separated Berkheimer's rib bone and drained his lungs. Berkheimer was then placed in two "medical comas" and remained hospitalized for approximately one month. Berkheimer continues to suffer from limited breathing compacity in his right lung as a result of the procedure, and requires a prescription for oxygen.

matter was fully briefed by the parties. On February 14, 2022, the trial court granted the defendants' motions and entered judgment in favor of REKM, Wayne Farms, and GFS on each of Berkheimer's claims. In so doing, the trial court found that a bone is a natural substance contained in meat, and even in dishes advertised as "boneless," common sense dictates that the presence of bone fragments is a natural enough occurrence that a consumer should reasonably expect and guard against it.

{¶ 10} Berkheimer now appeals, raising three assignments of error for our review.

{¶ 11} Assignment of Error No. 1:

{¶ 12} THE TRIAL COURT ERRED BY AGAIN APPLYING THE FOREIGN-NATURAL TEST INSTEAD OF CONSIDERING THE SPECIFIC FACTS OF THE CASE IN DETERMINING WHETHER A CONSUMER COULD REASONABLY ANTICIPATE AND GUARD AGAINST THE BONE IN A "BONELESS" WING.

{¶ 13} Assignment of Error No. 2:

{¶ 14} THE TRIAL COURT ERRED BY ALTERNATIVELY RULING PLAINTIFF FAILED TO STATE A CLAIM UNDER THE REASONABLE EXPECTATIONS TEST.

{¶ 15} In his first and second assignments of error, Berkheimer alleges the trial court improperly awarded summary judgment to appellees on his negligence claims. Specifically, Berkheimer claims the trial court misapplied the law when it concluded that the presence of a bone in a chicken product is, as a matter of law, neither foreign nor unreasonable to expect.

{¶ 16} We review a trial court's decision granting summary judgment de novo. *Estate of Mennett v. Stauffer Site Servs., L.L.C.*, 12th Dist. Warren Nos. CA2019-09-096 and CA2019-10-110, 2020-Ohio-4355. "De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial." *Matthews v. Texas Roadhouse*

*Mgt. Corp.*, 12th Dist. Butler No. CA2020-03-037, 2020-Ohio-5229, ¶ 4.

{¶ 17} Summary judgment is proper "if there are no genuine issues of material fact to be litigated, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party." *Drew v. Weather Stop Roofing Co., L.L.C.*, 12th Dist. Clermont No. CA2019-10-082, 2020-Ohio-2771, ¶ 10.

{¶ 18} The moving party bears the initial burden of informing the court of the basis for the motion and demonstrating the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). Once this burden is met, the nonmoving party may not rest upon the mere allegations or denials of the pleadings but must supply evidentiary materials setting forth specific facts showing there is a genuine issue of material fact for trial. *Anderson v. Jancoa*, 12th Dist. Butler No. CA2019-01-018, 2019-Ohio-3617, ¶ 23. Summary judgment is proper if the nonmoving party fails to set forth such facts. *Id.* In determining whether a genuine issue of material fact exists, the evidence must be construed in favor of the nonmoving party. *Palmer v. Mossbarger*, 12th Dist. Madison No. CA2014-04-011, 2015-Ohio-231.

{¶ 19} As noted above, Berkheimer alleged that the injuries he suffered from consuming the chicken bone in his boneless wing were a result of the appellees' negligence. The leading case in Ohio related to this issue is *Allen v. Grafton*, 170 Ohio St. 249 (1960). In that case, the Ohio Supreme Court determined that the possible presence of a piece of oyster shell in or attached to a fried oyster is so well known to anyone who eats oysters that, as a matter of law, one who eats oysters could reasonably anticipate and guard against eating such a shell. *Allen v. Grafton*, 170 Ohio St. 249, 251-254 (1960). In reaching its conclusion, the court reviewed the two tests commonly applied by courts in cases concerning injurious bones in meat dishes, i.e., the "foreign-natural" test and the

"reasonable expectation" test. *Id.* at 253-259.

**{¶ 20}** This court later summarized the two tests in *Mathews v. Maysville Seafoods, Inc.*, 76 Ohio App.3d 624 (12th Dist.1991). *Berkheimer I* at ¶ 14. "First, the 'foreign-natural' test provides: '[b]ones which are natural to the type of meat served cannot legitimately be called a foreign substance, and a consumer who eats meat dishes ought to anticipate and be on his guard against the presence of such bones.'" *Mathews* at 625, quoting *Mix v. Ingersoll Candy Co.*, 6 Cal.2d 674, 682 (Cal.1936). Second, the "reasonable expectation" test asks what the consumer should reasonably expect to find in his or her food, not what might be natural to the ingredients of that food prior to preparation. *Id.*, citing *Zabner v. Howard Johnson's Inc.*, 201 So.2d 824, 826-827 (Fla.App.1967).

**{¶ 21}** As this court noted in *Berkheimer I*, the Ohio Supreme Court did not formally adopt either test, but incorporated aspects of both tests in its analysis. Specifically, the court explained that,

> [i]n the instant case, it is not necessary to hold, as some of the above-cited cases do, that, because an oyster shell is natural to an oyster and thus not a substance "foreign" to an oyster, no liability can be predicated upon the sale of a fried oyster containing a piece of oyster shell. However, the fact, that something that is served with food and that will cause harm if eaten is natural to that food and so not a "foreign substance," will usually be an important factor in determining whether a consumer can reasonably anticipate and guard against it. * * *
>
> In our opinion, the possible presence of a piece of oyster shell in or attached to an oyster is so well known to anyone who eats oysters that we can say as a matter of law that one who eats oysters can reasonably anticipate and guard against eating such a piece of shell, especially where it is as big a piece as the one described in plaintiff's petition.

*Allen* at 258-259.

**{¶ 22}** In *Mathews*, this court applied the rule of *Allen* in a case involving a diner who consumed a fish bone while dining at a fast-food restaurant. *Mathews* at 627. In that case,

the fish bone at issue was alleged to have been approximately one and one-half inches long and was concealed in a fish fillet. *Id.* at 625. This court concluded that the trial court properly granted summary judgment to the defendants because, as a matter of law, "a consumer must reasonably anticipate and guard against the presence of a fish bone in a fish fillet." *Id.* We reasoned that "'[c]ourts cannot and must not ignore the common experience of life and allow rules to develop that would make sellers of food or other consumer goods insurers of the products they sell.'" *Id.*, quoting *Ex parte Morrison's Cafeteria of Montgomery, Inc.* 431 So.2d 975 (Ala.1983). We also noted that other cases involving fish bones had held similarly for fish bone lengths of one centimeter and one inch. *Id.*

{¶ 23} Based upon our holding in *Mathews* and the Ohio Supreme Court's analysis in *Allen*, the Sixth District affirmed summary judgment in favor of a fast-food restaurant after a patron suffered injuries from consuming a "boneless breast of chicken sandwich" that contained a bone. *Patton v. Flying J, Inc.*, 6th Dist. Wood No. WD-96-056, 1997 Ohio App. LEXIS 2402, 5 (June 6, 1997). In that case, a patron purchased a sandwich advertised as "boneless breast of chicken sandwich." Upon biting into the sandwich, the patron broke his tooth on a piece of bone concealed in the chicken breast. *Id.* at 1. The patron filed suit against the restaurant, alleging it was negligent. *Id.* at 2. Thereafter, the trial court granted summary judgment in favor of the restaurant. *Id.* On appeal, the patron argued it was "completely unreasonable" to expect a patron to anticipate and guard against such a bone where the restaurant advertised the food he purchased as "boneless." *Id.* The Sixth District rejected the patron's argument and concluded that, notwithstanding the fact that the chicken sandwich was advertised as "boneless," common sense dictates that the presence of bone fragments in chicken meat is a natural enough occurrence that the patron should have expected and guarded against it. *Id.* at 5. As a result, the court determined the restaurant

was entitled to judgment as a matter of law. *Id.*

**{¶ 24}** Similarly, in *Ruvolo v. Hamovich*, 149 Ohio App.3d 701 (8th Dist.2002), the Eighth District affirmed summary judgment in favor of a restaurant and its food distributors where a consumer was injured after consuming a bone concealed in a chicken gordita sandwich. In affirming summary judgment, the court concluded the chicken consumed by the consumer was similar to the chicken contained in a traditional sandwich, and therefore, he should have anticipated the natural occurrence of bone fragments in his chicken meat. *Ruvolo* at ¶ 11, citing *Patton*.

**{¶ 25}** In *Berkheimer I*, we reiterated that the supreme court's holding in *Allen* did not stand for the proposition that there will "never be a set of circumstances under which a plaintiff can recover for injuries suffered after ingesting a bone in a meat dish." *Berkheimer I* at ¶ 21. Instead, *Allen* requires the court to consider the specific facts of the case before concluding whether a consumer can reasonably anticipate and guard against eating an injurious object in a meat dish. *Id.*

**{¶ 26}** After considering the undisputed facts of this case, as well as the case law summarized above, we find the trial court did not err in granting summary judgment to appellees. As an initial note, it cannot be disputed that the bone which caused Berkheimer's injury was natural to the boneless chicken wing he consumed. Because a chicken bone is natural to a chicken breast, it is not a substance "foreign" to the chicken wing at issue here. *Patton*, 1997 Ohio App. LEXIS 2402 at 5; *Allen*, 170 Ohio St. 249 at 253-254 (indicating a product "natural" to the food is not a "foreign substance"). Relying upon cases from Maryland, New York, Iowa, and California, Berkheimer claims that, because REKM advertised the product as "boneless wings," a chicken bone is unnatural to that food, and is therefore, a foreign substance if present in the meat dish. However, despite the authority cited by Berkheimer, Ohio courts have not adopted a similar position. Rather, at least one

Ohio court has found that simply because a product is advertised as "boneless" does not negate that bone fragments in chicken meat is a natural occurrence. *Id.* at 4-5. *See also Schoonover v. Red Lobster Inns of Am. Inc.*, 1st Dist. Hamilton No. C-790547, 1980 Ohio App. LEXIS 10206, 3-4 (Oct. 15, 1980). As such, because the chicken bone at issue here was natural to the chicken meat used to produce the boneless wings, we conclude it cannot legitimately be considered an unnatural or "foreign substance."

{¶ 27} Turning to whether Berkheimer should have reasonably expected or anticipated the presence of the chicken bone, we will begin with the preparation and processing of the boneless wings. The record reflects that the boneless chicken wing consumed by Berkheimer was prepared from a boneless, skinless, chicken breast, which was manufactured by Wayne Farms and subsequently sold to REKM by GFS. It is undisputed that REKM prepared the chicken dish by cutting one of the chicken breasts into approximately one-inch sized cubes that were later fried. The chicken meat was not ground or further manipulated prior to serving; rather, the final product was "essentially[,] a breaded and fried piece of chicken breast." Given the description of the dish in the record, it appears the boneless chicken wing at issue in this case is similar to the chicken product analyzed in *Ruvolo* and is a cubed version of the product analyzed in *Patton*. As such, we are guided by the analysis of the appellate courts in those cases, as well as their applications of *Allen* and *Mathews* in analyzing the defendants' potential civil liability.

{¶ 28} Berkheimer attempts to distinguish cases like *Allen* and *Mathews* by emphasizing that, contrary to a fried oyster and fish filet, a boneless wing is "processed" and does not occur in nature. Due to its processed state, Berkheimer claims a reasonable person would not expect to find any natural products, like bones, in such a dish. However, drawing such a distinction ignores the longstanding principle in Ohio law that civil liability is not predicated on whether the dish is processed or natural. Rather, the nature of the dish

is merely a factor in the liability analysis. In fact, Ohio courts have routinely applied the liability analysis set forth in *Allen* in cases involving natural products concealed in unnatural or processed dishes. *See, e.g., Patton*, 1997 Ohio App. LEXIS 2402 at 5 (no civil liability where the presence of bone fragments in "boneless" chicken sandwich is a natural enough occurrence that the patron should have expected and guarded against it); *Lewis v. Handel's Homemade Ice Cream & Yogurt*, 11th Dist. Trumbull No. 2002-T-0126, 2003-Ohio-3507, ¶ 10 (holding that the presence of a pistachio shell in pistachio ice cream was not a basis for civil liability, as the presence of such a shell is a natural occurrence that should be reasonably anticipated and guarded against by the consumer); *Soles v. Cheryl & Co. Gourmet Foods & Gifts*, 3d Dist. Union No. 14-99-36, 1999 Ohio App. LEXIS 5529, 7 (Nov. 23, 1999) (presence of pecan shell in pecan cookie was not a basis for civil liability because the presence of such a shell is a natural occurrence that the consumer should reasonably anticipate); *Krumm v. ITT Continental Baking Co.*, 5th Dist. Fairfield No. 23-CA-81, 1981 Ohio App. LEXIS 12451, 2 (Dec. 9, 1981) (presence of cherry pit in cherry pie was not a basis for civil liability). Considering the above, we decline to abandon well-established Ohio law and apply a new or different standard in the instant action simply because a "boneless wing" is a processed food that does not occur in nature.

{¶ 29} Regarding the size of the chicken bone, the record reflects the bone removed from Berkheimer's esophagus was approximately one and three-eighths inches long. Such a bone is rather large given the description of the boneless wing's size in the record, as well as Berkheimer's decision to cut the wing into three bite sized pieces. As demonstrated by Berkheimer in his motion for summary judgment and his brief on appeal, a bone of that size would have encompassed nearly the entire third bite of the boneless wing. Berkheimer claims no reasonable consumer would have expected a chicken bone to be situated perfectly in the third bite of the boneless wing. However, like the large oyster shell in *Allen*,

which measured "about 1 1/5 inches by 4/5 of an inch," we conclude a reasonable person could have anticipated and guarded against a similarly large-sized bone concealed in a bite size piece of chicken. *Allen* at paragraph 4 of the syllabus; *see also Mathews* (finding no liability on behalf of a restaurant where the concealed fish bone measured one and one-half inches).

{¶ 30} The fact that such a large bone went undetected by Berkheimer suggests that the bone was likely undiscoverable by REKM, GFS, or Wayne Farms. Moreover, and as this court noted in *Mathews*, a defendant is not an insurer, and only has a duty to eliminate or remove in the preparation of the food he serves harmful substances that the consumer would not ordinarily anticipate or guard against. *Mathews* at 625, 627. Here, Ohio law indicates that a reasonable consumer could have reasonably anticipated and guarded against the bone at issue in this case. Therefore, because it is undisputed that the chicken bone caused Berkheimer's injuries, REKM, GFS, or Wayne Farms were not negligent in failing to detect or remove the chicken bone that injured Berkheimer.

{¶ 31} In light of all the foregoing, and after a thorough review of the record, this court concludes, as a matter of law, that that the presence of a chicken bone in a boneless chicken wing prepared from a cubed chicken breast is a natural occurrence that Berkheimer reasonably could have anticipated and guarded against. Common sense dictates the same result, as it is well settled that bone fragments may be present in chicken meat dishes. Accordingly, when construing the evidence before the court most strongly in favor of Berkheimer, reasonable minds can only conclude that appellees are entitled to summary judgment as a matter of law on Berkheimer's negligence claims. We therefore find that Berkheimer's first two assignments of error are without merit and are overruled.

{¶ 32} Assignment of Error No. 3:

{¶ 33} THE TRIAL COURT ERRED BY EVALUATING ALL OF PLAINTIFFS'

CLAIMS UNDER A NEGLIGENCE ANALYSIS.

{¶ 34} In his remaining assignment of error, Berkheimer claims the trial court erred in evaluating each of his claims under a negligence analysis, despite the remaining claims being independent from his negligence claim. We disagree.

{¶ 35} The record reflects Berkheimer asserted claims of negligence, breach of warranty, adulterated food, and misbranded food against REKM; claims of negligence, breach of warranty and strict liability against GFS; and claims of negligence, breach of warranty, strict liability, adulterated food, and misbranded food against Wayne Farms.

{¶ 36} In its summary judgment decision, the trial court found that "the mere presence of a chicken bone in a boneless wing is not negligence." In discussing Berkheimer's remaining claims, the trial court found that appellees did not provide food that was adulterated, as that term is used in the Revised Code, as the boneless wings contained a substance natural to the product, which Berkheimer, as a consumer, should have been on guard. The trial court continued to note that, while a restaurant is not an insurer, it only has the duty to remove harmful substances which a consumer would not ordinarily anticipate or guard against. Thus, because Berkheimer should have been on guard, the trial court concluded that Berkheimer's remaining claims failed as a matter of law.

{¶ 37} On appeal, Berkheimer argues that "[b]ecause the trial court erred by granting summary judgment on [Berkheimer's] negligence claim * * *, its grant of summary judgment on [Berkheimer's] other claims must be reversed as well." However, and as discussed in detail above, we find no error in the trial court's decision to grant summary judgment in favor of appellees on Berkheimer's negligence claims. This is because the presence of a chicken bone in a boneless chicken wing prepared from a cubed chicken breast is a natural occurrence that Berkheimer reasonably could have anticipated and guarded against. It is well established that when a reasonable person can anticipate and guard against an

injurious object in a meat dish, the food is not "adulterated" nor is it "not 'reasonably fit for' eating." *Allen*, 170 Ohio St. 249 at 259. Notably, Berkheimer does not assert on appeal any argument regarding the adjudication of his remaining claims aside from his allegation that the trial court utilized the incorrect test pursuant to *Allen*. Because we find no error in the trial court's decision to award summary judgment to REKM, GFS, and Wayne Farms on Berkheimer's negligence claims, and further find no error in the trial court's analysis of *Allen*, we similarly reject Berkheimer's identical argument in this assignment of error.

{¶ 38} Accordingly, finding no merit to Berkheimer's remaining claims, we overrule his third assignment of error.

{¶ 39} Judgment affirmed.

M. POWELL, P.J., and S. POWELL, J., concur.